The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner. The appealing party has shown good grounds to reconsider the evidence. The Full Commission affirms in part and reverses in part the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. The parties are bound by and subject to the North Carolina Workers Compensation Act.
2. At all relevant times, an employment relationship existed between plaintiff and defendant.
3. Defendant is a duly qualified self-insured and ITT Hartford is the third-party administrator.
4. Plaintiff suffers from a compensable occupational disease of plantars fasciitis, retrocalcaneal bursitis, and Achilles tendonitis, conditions that are peculiar to and characteristic of the occupations of dancers and dance instructors.
5. Plaintiffs medical records and other documentation relating to this case were stipulated into evidence as Stipulated Exhibit 1. This documentation consists of plaintiffs medical records, North Carolina Industrial Commission forms, vocational rehabilitation records, defendants discovery responses, plaintiffs discovery responses, correspondence, pleadings, Wake Forest University director of dance job description, and plaintiffs 1996 and 1997 W-2 Forms, as well as miscellaneous pay stubs from ATMCO.
6. Plaintiffs W-2 forms for 1993, 1994, and 1995 were stipulated into evidence as Stipulated Exhibit 2.
7. The issues before the Commission are: (i) whether plaintiff suffers from an occupational disease beginning on September 1, 1995, the date plaintiff stopped working for defendant; (ii) what is plaintiffs relevant average weekly wage; (iii) whether plaintiff is entitled to temporary total disability compensation from September 1, 1995 until August 15, 1996; (iv) whether plaintiff is entitled to temporary partial disability compensation; (v) whether plaintiff suffers or suffered from a compensable occupational disease of chronic low back strain and patellofemoral chrondosis secondary to her work as a dance instructor; and (vi) whether plaintiff is entitled to continuing medical treatment relating to a compensable occupational disease.
 ***********
The Full Commission finds as follows:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner plaintiff was 47 years old. Plaintiff has three children and three stepchildren.
2. Plaintiff has worked in the past as a florist, retail clerk, and clerical worker.
3. Plaintiff has an Associate degree from Indiana University Community College and a Bachelor of Science degree in physical education from Ball State University.
4. After completing her college education, plaintiff was employed as a physical education teacher in elementary and secondary schools in Indiana and Wyoming.
5. Plaintiff received a Masters degree in physical education from Ball State University in 1979. This program does not include sports physiology and its goal is to assist individuals to be gym teachers. Plaintiff did not take dance, speech, or fine arts programs while obtaining her undergraduate or graduate degrees.
6. From 1979 until 1981, plaintiff worked as a physical education instructor at Indiana State University. Plaintiff taught gymnastics, tennis, physical education, and dance. Plaintiff also worked as a waitress during this time to supplement her income.
7. In 1981, defendant hired plaintiff as a physical education instructor. Plaintiff subsequently taught foundations of physical education, gymnastics, social dance, beginning dance, and dance company.
8. The dance company class culminated in a student dance concert that plaintiff choreographed, directed, and produced.
9. Plaintiffs position with defendant was a non-tenured position and plaintiff taught an average of six classes per semester.
10. In 1991 defendant reorganized the physical education department refocusing the curriculum to sports physiology rather than physical education. As a part of this reorganization, defendant transferred the dance classes to the theater department and plaintiff began teaching dance classes in the theater department as a non-tenured dance instructor.
11. In the theater department, plaintiff taught jazz, social dance, aerobics, modern and beginning dance, and dance company. On average, between 1981 and 1995, plaintiff taught approximately 20 hours of dance per week.
12. Plaintiff also taught dance history, a lecture class, during summer school.
13. In 1992, plaintiff was promoted to dance director, a non-tenured position that was subject to yearly appointments. Plaintiff was responsible for dance instruction and continued to teach the same classes she had taught as a dance instructor. As dance director, plaintiff performed some administrative duties such as preparing program brochures for student performances. Plaintiff did not have any clerical assistance or staff. Plaintiffs responsibilities included submitting an annual grant application to the local arts council for financial assistance and overseeing the departments $6,000.00 budget.
14. In April 1993, plaintiff began experiencing problems with her right foot. Dr. David Janeway, an orthopedic specialist, treated plaintiff. Dr. Janeway diagnosed plaintiffs problems as plantars fasciitis, Achilles tendonitis, and retrocalcaneal bursitis to the right foot. As stipulated by the parties in the pre-trial agreement, these conditions are peculiar to and characteristic of the occupations of dancers and dance instructors and are a compensable occupational disease.
15. Dr. Janeway referred plaintiff to Dr. Robert Teasdale, an orthopedic surgeon at Bowman Gray School of Medicine, for another evaluation to determine if surgery was appropriate. Dr. Teasdale declined to recommend surgery due to prognosis uncertainty.
16. In January 1994, Dr. Janeway recommended that plaintiff remain out of work for six weeks. Plaintiff did not take time off work despite this recommendation. On February 9, 1994, Dr. Janeway placed a hard cast on plaintiffs right foot. Plaintiff did not miss any work despite the cast.
17. In March 1994 and again in October 1994, Dr. Janeway recommended that plaintiff stay off her foot and consider other types of employment because of her right foot problems.
18. At various times in the spring of 1994, plaintiff informed defendant that she could no longer perform her duties as director of dance and was no longer able to sustain prolonged standing because of her right foot condition.
19. In the spring of 1994, plaintiff applied for a 6-month leave of absence that began on January 1, 1995. During the leave of absence, plaintiff was paid $27,558.00, her full salary for that 6-month period. Furthermore, plaintiff was given discretionary leave pay through July and August, 1995.
20. In late December 1994 or early January 1995 plaintiff and her children moved to the Chicago area to be closer to her family. Defendant was aware of this relocation.
21. Plaintiff considered enrolling in a Masters program in fine arts at Northwestern University but did not do so because the program changed to a performance-based degree and plaintiff was not physically able to meet the dance performance requirements for this program.
22. Plaintiff returned to Wake Forest during the spring of 1995 to assist with the dance companys spring semester performance. Plaintiff helped with the rehearsals and choreography for the performance.
23. As of July 1, 1995, plaintiff reached maximum medical improvement of her compensable lower extremity right foot conditions. On August 15, 1996, Dr. Janeway assigned plaintiff a 7% permanent partial disability rating for her right foot.
24. On July 13, 1995, defendant granted plaintiffs request for a one-year unpaid leave of absence for the fall of 1995 through the spring of 1996. Defendant ceased all payments to plaintiff as of September 1, 1995.
25. After moving to the Chicago area, plaintiff applied for two jobs in January 1995, for three jobs in June 1995, and one job in August 1995. After September 1995, plaintiffs job search consisted of making only general inquiries about vacancies and reading the classified job sections of the newspaper.
26. In January 1996, plaintiff began working part time ten hours a week as a clerical worker/receptionist with ATMCO, a sporting equipment company owned by her father-in-law. Plaintiff was paid $10.00 an hour for this position and remained in this position until November 1998 when ATMCO went out of business. While in this position, plaintiff learned how to operate Peachtree, a computer-based accounting program.
27. Other than the part-time job at ATMCO, plaintiff made no efforts to find a job from September 1995 until September 1996 when she sent out ten job application letters seeking part-time work. After the job ended at ATMCO, plaintiff made no efforts to find work until February 1999, three months prior to the hearing before the Deputy Commissioner.
28. Two vocational rehabilitation experts testified in this case concerning their vocational assessment of plaintiffs wage earning capacity. The Commission gives greater weight to the expert opinion of Darren Stahulak than to that of Christopher Yep.
29. On June 22, 1999, plaintiff was again examined by Dr. Janeway who diagnosed plaintiff with chronic low-grade plantars fasciitis and indicated he did not believe that she could return to the rigors of dance instruction. Dr. Janeway was of the opinion that plaintiff could perform sedentary to light work with minimal time on her feet.
30. Plaintiff underwent a functional capacity evaluation on June 24, 1999. Plaintiff extended maximum effort and cooperated fully with all aspects of the test. The functional capacity evaluation indicated plaintiffs abilities were at a medium level. Plaintiff was advised to avoid prolonged standing in any future position.
31. Based upon the results of the functional capacity evaluation, Dr. Janeway stated that plaintiff was able to work full time with restrictions that she not be on her feet for periods greater than 2 hours and 2 hours off throughout the course of the day.
32. This was not a case of admitted liability. Defendant denied the compensability of plaintiffs lower extremity conditions until the parties entered into the pre-trial agreement for the hearing before the Deputy Commissioner. Therefore, plaintiff has no presumption of continuing disability.
33. In cases where there is no agreement as to the liability of a defendant in a claim for compensation, the plaintiff has the burden of showing that he or she is unable to earn the same wages that were earned prior to the injury, either in the same or other employment. Plaintiff in this case has been released to return to light duty work by Dr. Janeway and the functional capacity evaluation shows that plaintiff is capable of medium level work. After reaching maximum medical improvement on July 1, 1995 plaintiff has not demonstrated that she has made a reasonable but unsuccessful effort to obtain employment. Plaintiff has not shown by the greater weight of the evidence that her age, experience, and/or education would render a job search futile. For these reasons, the Full Commission finds that plaintiff retains some wage earning capacity within the restrictions recommended by Dr. Janeway.
34. Plaintiff was disabled from work and received wage-replacement benefits from January 1, 1995, until September 1, 1995. Defendant is entitled to an offset or credit for any workers compensation benefits owed during this period since defendant denied liability and no payments were due and payable.
35. Plaintiff failed to show by the greater weight of the evidence that she sustained any disability as a result of the compensable occupational disease after July 1, 1995.
36. Plaintiffs average weekly wage was $995.25, which yields the maximum compensation rate of $478.00.
37. Defendant has not defended this action unreasonably or without merit.
 ***********
Based upon the findings of fact, the Full Commission concludes as follows:
 CONCLUSIONS OF LAW
1. Plaintiff contracted and acquired the compensable occupational disease conditions of plantars fasciitis, retrocalcaneal bursitis, and achilles tendonitis as a result of causes and conditions characteristic of and peculiar to her employment with defendant. This occupational disease is not an ordinary disease of life to which the general public not so employed is equally exposed. N.C. Gen. Stat. 97-53(13).
2. In a denied case, the burden is on the employee to show that he or she is unable to earn the same wages that were earned prior to the injury. This burden may be met in four ways: (1) by producing medical evidence that the employee is incapable of work in any employment; (2) by producing evidence that the employee is capable of obtaining some employment but, after a reasonable effort, has been unable to obtain employment; (3) by producing evidence that the employee is capable of some work but due to other factors, such as age, lack of education, inexperience, etc., seeking work would be futile; or (4) by producing evidence that the employee is employed at a wage less than that earned prior to the injury by accident or contraction of the occupational disease. Russell v. Lowes Product Distribution, 108 N.C. App. 762,425 S.E.2d 454 (1993).
3. In this case, plaintiff failed to meet her burden of showing continuing disability. She has been released to return to work by her treating physician. She has not made a reasonable effort to obtain employment within her restrictions. Plaintiff has a Masters degree and extensive teaching and other work experience. Therefore, her age, education, experience, and training do not render a search for employment futile. For these reasons, plaintiff is not entitled to continuing total disability compensation beyond the date she reached maximum medical improvement. Id.
4. As a result of the contraction of the compensable occupational disease, plaintiff was temporarily totally disabled and is entitled to temporary total disability compensation at the rate of $478.00 per week from January 1, 1995 through July 1, 1995. N.C. Gen. Stat. 97-29.
5. As a result of her compensable occupational disease, plaintiff has a 7% permanent functional impairment to her right foot, for which plaintiff is entitled to compensation at the rate of $478.00 per week for 10 and 6/7ths weeks. N.C. Gen. Stat. 97-31(14).
6. Defendant had not accepted plaintiffs claim as compensable nor had there been a determination of compensability by the Industrial Commission at the time defendant made the wage replacement benefit payments. Therefore, payments made by defendant were not due and payable and defendant is entitled to a credit for wage replacement benefits paid to plaintiff between January 1, 1995 and September 1, 1995. N.C. Gen. Stat.97-42; Foster v. Western- Electric Co., 320 N.C. 113, 357 S.E.2d 670
(1987).
7. Subject to the time limitations of N.C. Gen. Stat. 97-25.1, plaintiff is entitled to receive all medical treatment that would effect a cure, give relief, or tend to lessen plaintiffs period of disability from her occupational disease. N.C. Gen. Stat. 97-25, -59.
8. Defendant has not defended this action unreasonably or without merit. N.C. Gen. Stat. 97-88.1.
 ***********
Based on the foregoing findings of fact and conclusions of law, the Full Commission affirms in part and reverses in part the holding of the Deputy Commissioner and enters the following:
 AWARD
1. For her compensable contraction of an occupational disease, defendant shall pay to plaintiff temporary total disability compensation at a rate of $478.00 from January 1, 1995 through July 1, 1995, subject to defendants credit for wage replacement benefits paid plaintiff during this period. Any amount of compensation remaining payable after the credit shall be paid in a lump sum subject to the attorneys fee approved below.
2. For her 7% permanent functional impairment to her right foot, defendant shall pay to plaintiff permanent partial disability compensation at the rate of $478.00 per week for a period of 10 and 6/7ths weeks. This amount has accrued and shall be paid to plaintiff in a lump, subject to defendants credit for wage replacement benefits and the attorneys fee approved below.
3. Subject to N.C. Gen. Stat. 97-25.1, defendant shall pay for all medical expenses relating to plaintiffs compensable occupational disease.
4. A reasonable attorneys fee of 25% of any compensation due plaintiff under Paragraphs 1 and 2 of this AWARD is approved for plaintiffs counsel and shall be paid directly to plaintiffs counsel.
5. Defendant shall pay the costs of this appeal.
This is the ___ day of February, 2001.
 S/________________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_________________ THOMAS J. BOLCH COMMISSIONER
 S/___________________ CHRISTOPHER SCOTT COMMISSIONER